# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01078-COA

JKWON OMARION PAGE                                              APPELLANT

v.

STATE OF MISSISSIPPI                                             APPELLEE

DATE OF JUDGMENT:            09/20/2023
TRIAL JUDGE:                HON. BRAD ASHLEY TOUCHSTONE
COURT FROM WHICH APPEALED:  LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                            BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: CASEY BONNER FARMER
DISTRICT ATTORNEY:          HALDON J. KITTRELL
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED - 06/18/2024
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     A Lamar County Circuit Court jury found Jkwon Page guilty of rape, sexual battery, and burglary of a dwelling. The circuit court sentenced Page to serve thirty years for rape, thirty years for sexual battery, and twenty-five years for burglary of a dwelling to be served concurrently in the custody of the Mississippi Department of Corrections.[1] Page was also ordered to pay a total of $2,000 to the Victims of Human Trafficking and Commercial Sexual Exploitation Fund and court costs, and he was ordered to register as a sex offender. After

---

[1] The circuit court ordered Page's sentences in this case to run consecutively to his sentences in "Forrest County Cause Number 22-CR-133 and Lamar County Cause Number 22-CR-177BT."

the denial of his post-trial motion, Page appealed claiming that the circuit court erred by admitting evidence of two prior bad acts. We find no abuse of discretion in the circuit court's evidentiary ruling and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On January 24, 2022, Deputy Esmeralda Gonzalez responded to a 911 call that a sexual assault had occurred at the Campus Trail Apartments in Lamar County. Deputy Gonzalez arrived at the apartment complex at 1:13 a.m. and spoke with A.W.,[2] who stated that a man had entered her apartment with what appeared to be an assault rifle and forced her to have sexual intercourse. According to A.W., her two children were asleep in another room, and he threatened to sexually assault one of them if she did not also perform oral sex. A.W. described the man to law enforcement as an African-American man who was 5 feet, 8 inches tall and had light brown eyes. She stated that he was wearing a black hoodie with a white logo, black pants, and a black mask.

¶3. Law enforcement sent A.W. to the emergency room where a rape kit was administered. Although the presence of sperm cells was detected on A.W.'s body, there was an insufficient amount of genetic information to yield a DNA profile. Meanwhile, A.W.'s description of the man who sexually assaulted her was sent to various law enforcement officers. Although law enforcement did not find anyone matching the description that night, Jkwon Page was arrested several days later.

¶4. Prior to trial, the State filed a motion seeking to admit evidence of two incidents

---

[2] We use initials to protect the victim's identity.

involving Page that had occurred shortly before A.W. was sexually assaulted. After a hearing, the circuit court granted the State's motion, finding that the evidence was admissible to prove identity and to explain how Page became a suspect in this case. The circuit court further found that the evidence was "more probative than prejudicial."

¶5.     At trial, Jeremy Thompson testified about the first incident, which had occurred at his home in Hattiesburg. At 11:36 p.m.—less than two hours before A.W. was sexually assaulted—Thompson's neighbor noticed an individual with a gun on Thompson's porch and called 911. Over defense counsel's continuing objection, surveillance footage from Thompson's security cameras was played for the jury, and still photographs were admitted into evidence.[3] Thompson testified that the surveillance footage showed a man in dark clothing and a face mask get out of a red SUV with what appeared to be an assault rifle and approach his (Thompson's) front porch. However, the man ultimately drove away.

¶6.     Jada Evans testified about the second incident. Approximately eleven minutes after the incident at Thompson's house, but still before A.W. was sexually assaulted, Evans noticed a red SUV driving behind her in Hattiesburg. At some point, the driver used his vehicle to force her to stop. Evans testified that a man wearing dark clothing and a mask got out of the driver's side of vehicle, pointed what appeared to be an assault rifle at her, and attempted to break into her vehicle. The man screamed at Evans to get out of her vehicle, but she told him that she did not have anything. Eventually, he gave up and drove away, and Evans called 911. Over defense counsel's continuing objection, traffic camera footage and

---

[3] The State explained that the photographs would allow the witness to testify without having to repeatedly watch the videos.

still photographs of the footage were admitted into evidence. Additionally, Evans identified the man in the surveillance footage from Thompson's security cameras as the same man she had encountered.

¶7. Investigator Scott Wagner with the Lamar County Sheriff's Office testified that at some point after A.W. was sexually assaulted, the Hattiesburg Police Department informed him of the two incidents that had occurred less than two hours before A.W. was sexually assaulted. The city police seemingly had been aware of the description of the suspect that A.W. had given to law enforcement and believed that the incidents involved the same suspect.

¶8. Several days later, on January 29, 2022, Page was arrested during a separate incident. At the time of his arrest, Page was wearing a black hoodie with a white logo and black pants. Additionally, it was noted that he was 5 feet, 8 inches tall and had brown eyes. During an interview with law enforcement, Page admitted to driving his mother's red SUV to Thompson's house and being the person with the gun who was seen on Thompson's security camera. He also admitted to following Evans with the intent to rob her.

¶9. With respect to A.W., Page stated that he had previously noticed A.W. in the apartment complex where he also lived with his mother. Page admitted to being in A.W.'s apartment, but he stated that he only intended to steal something and that a man named JuJu must have stayed behind after he left. Page did not provide any contact information for JuJu and stated that JuJu "just appears." Page indicated that JuJu might have a Facebook account and told law enforcement to "[j]ust type in JuJu." Although Page indicated that his brothers

4

might know how to find JuJu, no contact information was ever provided.

¶10. Law enforcement searched the apartment where Page had been living and found at least one condom that matched a partial condom wrapper that was found in A.W.'s apartment.[4] Additionally, law enforcement searched the red SUV that Page admitted to driving and found a handgrip specific to an AR-15; however, officers did not find an assault rifle.

¶11. Finally, A.W. testified that the man who sexually assaulted her was the only man who had been inside her apartment and that he did not steal anything. She testified that the man who sexually assaulted her told her that he had been watching her. And she testified that the man caught on Thompson's security camera was the same man who sexually assaulted her and that he was wearing the same clothing and holding the same gun.

¶12. After the State rested, the defense argued that Page was entitled to a directed verdict because the State had not proved that he was the person who committed the crimes against A.W. The circuit court denied the motion, and the defense rested without calling any witnesses. After considering the evidence presented at trial, the jury found Page guilty of rape, sexual battery, and burglary of a dwelling. The court accordingly sentenced Page and later denied his motion for judgment notwithstanding the verdict or a new trial.

**DISCUSSION**

¶13. We must decide whether the circuit court erred by allowing the State to introduce evidence of the two incidents involving Page that occurred shortly before A.W. was sexually

---

[4] The partial condom wrapper found in A.W.'s apartment did not contain any latent fingerprints of value.

5

assaulted. "A circuit court's admission of evidence is reviewed on appeal 'under the abuse-of-discretion standard.'" *McClusky v. State*, 359 So. 3d 673, 676 (¶9) (Miss. Ct. App. 2023) (quoting *Boggs v. State*, 188 So. 3d 515, 519 (¶9) (Miss. 2016)).

¶14. "Mississippi Rule of Evidence 404(b) generally prohibits 'evidence of a crime, wrong, or other act' used 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *Id*. at 677 (¶11) (quoting MRE 404(b)(1)). "Such evidence, however, may be admissible to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *Id*. (quoting MRE 404(b)(2)). "Trial judges also have the discretion to admit evidence of other crimes or bad acts for reasons not listed in Rule 404(b)(2), like telling the complete story so as not to confuse the jury." *Taylor v. State*, 374 So. 3d 617, 625 (¶21) (Miss. Ct. App. 2023) (quoting *Amos v. State*, 360 So. 3d 323, 332 (¶30) (Miss. Ct. App. 2023)).

¶15. "However, prior to admitting the other-bad-acts evidence, a trial judge must filter the evidence through Mississippi Rule of Evidence 403." *Id*. This rule provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

MRE 403.

¶16. As noted, "prior-bad-acts testimony first must be evidence of 'crimes, wrongs, or acts' introduced 'for the purpose of showing that a person acted in conformity therewith.'" *Taylor*, 374 So. 3d at 626 (¶23). "The prosecution may not introduce prior bad acts for the purpose of showing that the defendant has a propensity to engage in such conduct, that is,

6

because he had done things like this before, he probably did it this time." *Id*. Here, however, the evidence of the two incidents involving Page that occurred shortly before A.W. was sexually assaulted was not introduced for the purpose of showing that Page acted in conformity therewith or that he had a propensity to engage in such conduct. Instead, the evidence was admitted to prove identity and to tell a complete story.

¶17. On appeal, Page argues that "[t]here was no issue about [his] identity[.]" However, Page's defense at trial seemingly was that a man named JuJu committed the crimes against A.W. Furthermore, Page moved for a directed verdict after the State rested its case on the basis that the State had not proved that he was the person who committed the crimes in this case.

¶18. Page also argues that the State could have presented its case without the prior bad-acts evidence because he admitted to law enforcement that he was in A.W.'s apartment, A.W.'s description of the suspect was consistent with his size and appearance, he lived in the same apartment complex as A.W. and admitted to watching her, law enforcement found an assault rifle handgrip in the vehicle that he was driving, and law enforcement found at least one condom in the apartment where he was living that matched the partial condom wrapper in A.W.'s apartment. But Page did not admit to sexually assaulting A.W. Instead, he told law enforcement that he only entered the apartment to steal something and suggested that a man named JuJu must have stayed behind after he left. The evidence of the two prior incidents involving Page was probative, showing that Page had been acting alone in the hours immediately before A.W. was assaulted. Specifically, the video footage from Thompson's

7

security cameras showed only one person at Thompson's house—Page. And A.W. testified that the man in the footage was the same person who sexually assaulted her. Additionally, Evans testified that she saw only one person—Page. The evidence corroborated A.W.'s testimony that only one person was in her apartment and was admissible to prove identity. Additionally, the evidence of the prior incidents involving Page was admitted to tell a complete story. Specifically, the circuit court found that the evidence was admissible to explain to the jury how Page became a suspect in this case and "to prevent the jury from being confused as to the nature of the investigation."

¶19. The circuit court considered whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice and found that it was not. The circuit court specifically held that the evidence was more probative than prejudicial due to the fact that identity was "a major issue in this case."

¶20. Finally, the jury was given a limiting instruction explaining that "evidence of other alleged acts or crimes [is] not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character, but [is] to be considered only for the limited purpose of showing proof of identity, motive, and intent." The instruction further explained that the jury "must not simply infer that [Page] acted in conformity with his previous acts and that he is therefore guilty of the charge for which he is presently on trial." After review, we find no abuse of discretion in the circuit court's evidentiary ruling, and we affirm Page's convictions and sentences.

¶21. **AFFIRMED.**

8

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**